IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EUGENE ROMERO,                        )
                                      )
                Plaintiff,            )
                                      )   CIVIL ACTION
v.                                    )
                                      )   No. 08-2584-JWL-GBC
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
                Defendant.            )
_____ )

REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i), and 423(hereinafter the Act).  The court finds the medical opinion evidence of record can be weighed but one way, and recommends the Commissioner's decision be REVERSED and judgment be entered REMANDING the case for an immediate award of benefits.

I.   **Background**

Plaintiff filed an application for DIB on November 5, 2004, alleging he was disabled beginning July 2, 2000.  (R. 13).  His application was denied initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge (ALJ).

<u>Id.</u>  Plaintiff's request was granted, and a hearing was held before ALJ Christine Cooke on January 11, 2007.  <u>Id.</u>  On June 6, 2007, the ALJ issued a decision in which she found plaintiff disabled within the meaning of the Act beginning July 6, 2005, but not at any earlier time.  (R. 13-27).

In reaching her decision, the ALJ considered the medical opinions of five "acceptable medical sources"[1] in relation to plaintiff's mental impairments:  (1) plaintiff's treating psychiatrist, Dr. Rahman, who completed a "Mental Impairment Questionnaire" on July 6, 2005; (2) a nonexamining psychologist, Dr. Perry, who testified at the ALJ's request as a medical expert(or advisor) at the hearing; (3) a nontreating psychologist, Dr. Schlosberg, who performed a consultative psychological examination at the ALJ's request after the hearing; and (4) two nonexamining psychologists, Dr. Schulman, and Dr. Adams, who are state agency psychological consultants, and who reviewed the evidence in the file and completed or reviewed a "Psychiatric Review Technique Form" and a "Residual Functional

---

[1]The regulations define three types of "acceptable medical sources:"

"Treating source:"  a medical source who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. § 404.1502 (2007).
"Nontreating source:"  a medical source who has examined the claimant, but never had a treatment relationship.  <u>Id.</u>
"Nonexamining source:"  a medical source who has not examined the claimant, but provides a medical opinion.  <u>Id.</u>

Capacity Assessment - Mental," on February 2, 2005 and May 4, 2005, respectively. (R. 19-23). The ALJ found plaintiff disabled beginning July 6, 2005, and accepted the opinions of Drs. Rahman, Perry, and Schlosberg beginning on that date, but no earlier, and gave "great weight" to the opinions of the nonexamining sources, Drs. Schulman and Adams, regarding all relevant periods before July 6, 2005. (R. 21-22).

The ALJ determined plaintiff's impairments met the requirements of Listings 12.04 and 12.06 beginning July 6, 2005. (R. 18). She found that at all earlier times plaintiff was unable to perform his past relevant work, but was able to perform jobs that exist in significant numbers in the economy. (R. 23-25). Consequently, she found that plaintiff is disabled within the meaning of the Act beginning July 6, 2005, but not before, and awarded benefits accordingly. (R. 26).

Plaintiff disagreed with the ALJ's finding regarding onset date, and on June 26, 2007 sought Appeals Council review of the decision. (R. 8). The Appeals Council had the request under advisement for almost fifteen months, but on September 24, 2008 found no reason under the law, regulations, and rulings to review the decision, and denied plaintiff's request. (R. 5-7). Therefore, the ALJ's decision became the final decision of the Commissioner, and plaintiff now seeks judicial review. Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006); (Doc. 1).

-3-

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. § 405(g).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).  Substantial evidence is more than a scintilla, but less than a preponderance, and is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001)(quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which

prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. § 404.1520 (2007); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520.  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

-5-

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy. <u>Williams</u>, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff makes but one argument before this court--that the ALJ improperly weighed the medical opinions, and therefore erroneously determined the onset date of disability was July 6, 2005, and not July 2, 2000. (Pl. Br. 14-18). The Commissioner argues that the ALJ properly discounted the opinions of the treating physician, Dr. Rahman, the nontreating psychologist, Dr. Schlosberg, and the nonexamining medical expert, Dr. Perry for the period before July 6, 2005, and properly gave substantial weight to those same opinions beginning July 6, 2005 and thereafter. He argues that the ALJ properly accorded great weight to the opinions of the nonexamining psychologists, Drs. Schulman and Adams for the period from July 2, 2000 through July 5, 2005, and that substantial evidence in the record as a whole supports the ALJ's decision.

## III. Discussion

### A.   Legal Standard for Evaluating Medical Opinions

"Medical opinions are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."  20 C.F.R. § 404.1527(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all will be evaluated by the Commissioner in accordance with factors contained in the regulations.  Id. § 404.1527(d); Social Security Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2009).  A physician who has treated a patient frequently over an extended period of time (a treating source) is expected to have greater insight into the patient's medical condition.  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407,

-7-

412 (10th Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789
(7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955,
963 (3d Cir. 1984)).

Opinions from any medical source, even opinions regarding
issues reserved for the Commissioner, must not be ignored, and
will be evaluated by the Commissioner in accordance with factors
contained in the regulations.  20 C.F.R. § 404.1527(d); SSR 96-
5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp.
2009).  Determination of issues reserved to the Commissioner,
however, such as opinions regarding:  whether an impairment meets
or equals a listing; plaintiff's RFC; whether a plaintiff can do
past relevant work; how age, education, and work experience
apply; and whether a plaintiff is disabled, will <u>not</u> be given any
<u>special significance or controlling weight</u>.  20 C.F.R.
§ 404.1527(e)(2 & 3); SSR 96-5p, West's Soc. Sec. Reporting Serv.
123-24 (Supp. 2009); SSR 96-8p, West's Soc. Sec. Reporting Serv.
150, n.8 (Supp. 2009).

If a treating source opinion is not given controlling
weight, it is "still entitled to deference and must be weighed
using all of the factors provided in 20 C.F.R. § 404.1527."
<u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003).  Those
factors are:  (1) length of treatment relationship and frequency
of examination; (2) the nature and extent of the treatment
relationship, including the treatment provided and the kind of

-8-

examination or testing performed; (3) the degree to which the
physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and (6) other factors brought to
the ALJ's attention which tend to support or contradict the
opinion.  <u>Id.</u> at 1301; 20 C.F.R. §§ 404.1527(d)(2-6),
416.927(d)(2-6); <u>see also</u> <u>Drapeau v. Massanari</u>, 255 F.3d 1211,
1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human
Servs.</u>, 52 F.3d 288, 290 (10th Cir. 1995)).

    An ALJ or the court may not look at medical opinions in
isolation; they must be considered in light of the other opinions
and the entire evidentiary record.  <u>Schreffler v. Astrue</u>, No. 08-
1200-WEB, slip op. at 10-11, (D. Kan. May 28, 2009) <u>adopted by
the District Court</u> (Aug. 4, 2009).  After considering the
factors, the ALJ must give reasons in the decision for the weight
he gives the treating source opinion.  <u>Id.</u> 350 F.3d at 1301.
"Finally, if the ALJ rejects the opinion completely, he must then
give 'specific, legitimate reasons' for doing so."  <u>Id.</u>  (citing
<u>Miller v. Chater</u>, 99 F.3d 972, 976 (10th Cir. 1996) (quoting <u>Frey
v. Bowen</u>, 816 F.2d 508, 513 (10th Cir. 1987)).

    **B.    The Evidence and the ALJ's Findings**

    Dr. Rahman, a psychiatrist, treated plaintiff approximately
monthly beginning August, 2003.  (R. 394, 377-90, 399-407).  On

July 6, 2005 he prepared a statement of his medical opinion in
which he stated that plaintiff had severe major depression and a
generalized anxiety disorder resulting in a GAF[2] score of 50 with
50 being the highest score in the past year.  (R. 394-98).  He
stated plaintiff's prognosis is "poor/fair," that plaintiff's
impairment or treatment would cause him to be absent from work
more than three times a month, and that plaintiff "cannot
maintain a work schedule or receive/give supervision."  (R. 396).
He opined that plaintiff has "Marked" difficulties in maintaining
social functioning, "Frequent" deficiencies of concentration,
persistence or pace resulting in failure to complete tasks in a
timely manner, and "Continual" episodes of deterioration or
decompensation in work or work-like settings which cause the
individual to withdraw from that situation or to experience
exacerbation of signs and symptoms.  (R. 397).  Finally, he

---

[2]Global Assessment of Functioning.  A GAF score is a
subjective determination which represents "the clinician's
judgment of the individual's overall level of functioning."  Am.
Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental
Disorders (DSM-IV) 30 (4th ed. 1994).  The GAF Scale ranges from
100 (superior functioning) to 1 (persistent danger of severely
hurting self or others, persistent inability to maintain minimal
personal hygiene, or serious suicidal act with clear expectation
of death).  Id. at 32.  GAF is a classification system providing
objective evidence of a degree of mental impairment.  Birnell v.
Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt
v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).
     A GAF score in the range of 41-50 indicates "**Serious
symptoms . . . OR any serious impairment in social, occupational,
or school functioning.**"  DSM-IV, at 32.

stated that the limitations and symptoms described in his opinion have been present since "01/04."  (R. 398).

Dr. Perry, a psychologist, testified as a medical expert at the ALJ hearing.  (R. 452, 468-40).  She testified without objection that she is "familiar with the listings of impairments together with the rules and regulations which govern disability as that term is defined by Social Security," and that she had been provided all of the medical records in this case, numbered 1F through 16F.  (R. 469).  She acknowledged that plaintiff has alleged disability due to mental impairments since "July 12th, 2000,"[3] then stated her opinion (based primarily upon Exhibits 1F, 3F, 4F, 11F, 12F, 14F, and 15F) that plaintiff's condition equals Listings 12.04 and 12.06.  (R. 469-70).

After the hearing, the ALJ sent plaintiff to Dr. Schlosberg, a psychologist, for a consultative psychological examination.  In his report, Dr. Schlosberg noted that plaintiff had "some impairment in attention and concentration," and "adequate" memory, and that plaintiff had taken the MMPI-2 test, but the score was invalid because plaintiff "showed an extreme tendency to present himself in an unfavorable light."  (R. 477).  He opined that plaintiff had moderate to severe major depressive

---

[3]Although plaintiff actually alleged an onset date of July 2, 2000 (R. 13, 52), the ALJ misspoke at the hearing and informed Dr. Perry that plaintiff alleged disability beginning July 12, 2000.  (R. 469).

disorder, and generalized anxiety disorder, with a GAF score of
45-50.  Id.  Dr. Schlosberg stated that emotional symptoms "are
interfering with [plaintiff's] ability to cope with everyday
stresses," and "he would require longer than normal to learn new
tasks." (R. 477-78).  Dr. Schlosberg felt that plaintiff's
"capacity for concentration would likely be adequate for focusing
on simple tasks" for an eight-hour workday, that his "Practical
judgment and reasoning is not significantly impaired and would be
adequate," that he could interact appropriately with coworkers,
supervisors, and the general public, and that he shows the
necessary judgment and calculation abilities. (R. 478).  Dr.
Schlosberg stated that plaintiff's "ability to work with others
without distractions or interference from her [sic] psychological
symptoms is likely compromised," and his "symptoms of depression
and anxiety would likely prevent him from keeping a regular work
schedule." Id.

Dr. Schulman, a state agency consultant psychologist,
completed a "Psychiatric Review Technique Form," and a "Residual
Functional Capacity Assessment - Mental," on February 2, 2005
based upon the record as constituted on that date. (R. 310-31).
He opined that plaintiff has recurring major depressive disorder
and generalized anxiety disorder, and that he has "Mild"
restrictions in activities of daily living, "Moderate"
difficulties in maintaining social functioning, "Mild"

difficulties in maintaining concentration, persistence, or pace, and "None" episodes of decompensation.  (R. 313, 315, 320).  Dr. Schulman opined that plaintiff does not meet the listings, and that he is "Moderately Limited" in the ability to maintain attention and concentration for extended periods, and in the ability to interact appropriately with the general public.  (R. 322, 327-28).  He felt plaintiff can handle three to four step instructions and tasks, can make decisions although he is indecisive, and should be able to do tasks in an ordinary setting.  (R. 331).  Dr. Adams, also a state agency consultant psychologist, reviewed and affirmed Dr. Schulman's assessment at the reconsideration review on May 4, 2005, adding only:  that there was "no worsening," "Records show ongoing tx [(treatment)], no significant change in ADLs," and "psych records report frequent urination secondary to anxiety."  (R. 310, 323).

The ALJ accorded "little weight" to Dr. Rahman's treating source opinion and "far greater weight" to the "actual clinical findings and diagnostic assessments set fourth in the contemporaneous psychiatric treatment notes" for the period from July 2, 2000 through July 5, 2005.  (R. 21).  In giving reasons for discounting Dr. Rahman's opinion during this period she stated: (1) there is no evidence Dr. Rahman has expertise in applying the Psychiatric Review Technique, and Dr. Rahman's treatment notes reveal plaintiff has never had episodes of

decompensation; (2) Dr. Rahman's opinion of moderate or marked difficulties is inconsistent with his treatment notes; (3) Dr. Rahman's GAF score of 60/70[4] assigned in August 2003, and his treatment notes into mid-2005 are not consistent with the severity of limitations opined; (4) Dr. Rahman's opinion related only to plaintiff's condition since January 2004 and did not relate to the period from July 2000 through January 2004; (5) although Dr. Rahman's opinion is consistent with mental health treatment notes from the late 1990s, plaintiff was working in the late 1990s, showing that even a condition consistent with Dr. Rahman's opinion was not disabling; (6) Dr. Rahman's opinion is inconsistent with the treatment notes from the University of Kansas Medical Center through at least 2002; (7) plaintiff did not quit work in 2000 because of mental impairments, but because his employer restructured his job, and plaintiff chose not to continue working under those criteria; and (9) plaintiff worked in sales activities involving a wide range of basic mental activities and detailed social interaction from 2001 through the date of the hearing.  (R. 19-20).

---

[4]A GAF score in the range of 51-60 indicates "**Moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning.**"  Id.(emphasis in original).

A GAF score in the range of 61-70 indicates "**Some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well.**" DSM-IV 32(emphasis in original).

Conversely, the ALJ accorded "significant weight" to Dr. Rahman's opinion on and after July 6, 2005, the date Dr. Rahman signed the "Mental Impairment Questionnaire." (R. 21). The ALJ assigned July 6, 2005 as the onset date of disability. (R. 18). She stated her reasons for according Dr. Rahman's opinion "significant weight" on and after July 6, 2005: (1) plaintiff experienced a large reduction in earnings in 2005; (2) Dr. Rahman's notes reflect monthly to quarterly visits after 2005; (3) plaintiff admitted that adjustments in prescribed medication improved his concentration and attention span; (4) Dr. Rahman stated plaintiff "'has very dramatic and exaggerated symptom magnification,' [which is] generally supportive of the overall degrees of functional limitations assessed on the questionnaire;'" and (5, 6, and 7) "Dr. Rahman is a board-certified psychiatrist and well-qualified mental healthcare specialist who has established a long treating relationship with claimant." (R. 20-21).

With regard to the opinion of the nonexamining medical expert, Dr. Perry, the ALJ accorded "considerable weight" to Dr. Perry's January 11, 2007 opinion testimony for the period beginning July 6, 2005, "but not prior thereto." (R. 21)(emphasis added). She discounted Dr. Perry's opinion for the earlier period because Dr. Perry (1) "testified only very

-15-

briefly," (2) did not specify which "specific subsections"[5] of
the Listings were equaled, (3) did not provide a detailed
rationale for her opinion, or (4) an assessment in accordance
with the Psychiatric Review Technique, (5) did not specify a
timeframe for equaling the Listings, and (6) did not reconcile
her opinion with the contemporaneous clinical findings and
diagnostic assessments which are (in the ALJ's opinion)
indicative of lesser restrictions.  Id.  Finally, she discounted
Dr. Perry's opinion for the earlier period because (7) Dr. Perry
had considered Dr. Rahman's opinion which had been accorded
little weight by the ALJ for the time before July 6, 2005.  Id.

        The ALJ found Dr. Schlosberg's opinion "is supportive of the
opinions provided by Drs. Rahman and Perry, but not for the
relevant period at issue prior to July 6, 2005."  Id.(emphasis
added).  She accorded "greater weight" to "the clinical findings
and diagnostic assessments reflected in actual psychiatric
treatment notes for the relevant period at issue."  (R. 21-22).

        For the period from July 2, 2000, through July 5, 2005, the
ALJ accorded "great weight" to the opinions of Drs. Schulman and
Adams.  (R. 22).  She noted that these psychologists are
(1) licensed psychologists and (2) "acceptable medical sources,"

_____

        [5]The court assumes that although she used the term
"subsection" in the decision, the ALJ is referring to whether
plaintiff's condition equals the paragraph B or paragraph C
criteria of each Listing.  20 C.F.R., Pt. 404, Subpt. P, App. 1
§ 12.00(A).

and (3) have "specific expertise regarding the evaluation of mental impairments under the severity requirements set forth in the Listing of Impairments and the disability programs administered by the Social Security Administration." Id.  She found the opinions (4) mutually supportive, (5) consistent with contemporaneous treatment notes, and (6) supported by the evidence as a whole.  Id.

### C.   Parties Arguments

Plaintiff argued that the ALJ's assigned onset date is in direct conflict with the opinions of Dr. Perry and Dr. Rahman. He argued that the ALJ failed to fulfill her basic duty of inquiry when she failed to ask any further questions of Dr. Perry after Dr. Perry testified that plaintiff's condition equals Listings 12.04 and 12.06.  He argued that, as the ALJ admitted, Dr. Schlosberg's opinions supported Dr. Perry's and Dr. Rahman's opinion, and Dr. Schlosberg did not limit his opinion to a particular period of time.  Finally, plaintiff explained how, in his view, Dr. Rahman's contemporaneous treatment notes and the other medical records support and are consistent with the opinions of Dr. Rahman, Dr. Perry, and Dr. Schlosberg.

The Commissioner argued that the ALJ's consideration of the medical opinions and determination of onset date was proper, and supported by substantial evidence in the record as a whole.  The Commissioner cited to record evidence which, in his view,

supports the reasons given by the ALJ to discount the medical
opinions of Drs. Rahman, Perry, and Schlosberg for the period
before July 6, 2005.  The Commissioner noted that the ALJ gave
great weight to the opinions of the state agency psychological
consultants (Drs. Schulman and Adams), and quoted SSR 96-6p for
the proposition that, "In appropriate circumstances, opinions
from State Agency medical and psychological consultants and other
program physicians and psychologists may be entitled to greater
weight than the opinions of treating or examining sources."
(Comm'r Br. 11-12)(quoting SSR 96-6p).  The Commissioner
reiterated the reasons given by the ALJ for discounting Dr.
Perry's opinion for the period before July 6, 2005, and argued
that the ALJ did not fail in her duty of inquiry because she need
not exhaust every possible line of inquiry, but the standard is
"one of reasonable good judgment and is limited to 'fully and
fairly develop[ing] the record as to material issues.'" (Comm'r
Br. 13-14)(quoting Hawkins v. Chater, 113 F.3d 1162, 1168 (10th
Cir. 1997)).  He noted that like the ALJ, plaintiff's counsel did
not ask a single question of Dr. Perry.

Plaintiff filed a rely brief in which he reiterated his view
that Dr. Rahman's treatment notes support his opinion for the
entire period at issue.  He admitted that the Commissioner is
correct to state that plaintiff lost his job due to company
restructuring, but pointed to evidence that plaintiff's job loss

exacerbated his mental impairments, and that plaintiff had already taken a medical leave of absence from April 1999 through August 1999 due to mental impairments, and lost his job just ten months later.  Finally, he admitted that counsel had not questioned Dr. Perry at the hearing, but argued that there was no reason to do so because the ALJ did not articulate any reservations regarding Dr. Perry's testimony.  In his brief and in his reply, plaintiff argued that further fact-finding would serve no useful purpose, and the court should remand for an immediate award of benefits beginning July 2, 2000.

**D.    Analysis**

The propriety of the ALJ's decision of this case depends upon whether substantial evidence in the record as a whole supports the determinations:  (1) to give "significant weight" or "considerable weight" to the opinions of Drs. Rahman, Perry, and Schlosberg beginning July 6, 2005, but not before; and (2) to give "great weight" to the opinions of Drs. Schulman and Adams for the period before July 6, 2005.  Many of the issues relating to these questions would have been clarified had Dr. Perry been asked to explain her opinion more fully in terms of application of the psychiatric review technique and in terms of how the opinion relates specifically to the medical evidence, particularly the evidence relevant to treatment of plaintiff's mental impairments in the late 1990's through July 2005.

Plaintiff is correct to argue that the ALJ failed in her
duty of inquiry.  In a line of cases reaching back to Justice
Brennan's concurring opinion in Heckler v. Campbell, 461 U.S.
458, 471 (1983), the Tenth Circuit has recognized that an ALJ in
Social Security proceedings has a "duty of inquiry."  Tillery v.
Schweiker, 713 F.2d 601, 602 (10th Cir. 1983)(citing J. Brennan's
concurring opinion in Campbell); Dixon v. Heckler, 811 F.2d 506,
510 (10th Cir. 1987)(same, and recognizing the duty of inquiry
extends to the district court); Jordan v. Heckler, 835 F.2d 1314,
1315 (10th Cir. 1987)(same); Hill v. Sullivan, 924 F.2d 972, 974
(10th Cir. 1991)(same); Thompson v. Sullivan, 987 F.2d 1482, 1492
(10th Cir. 1993)(citing Campbell, and Dixon); Baca v. Dep't of
Health and Human Servs., 5 F.3d 476, 479-80 (10th Cir.
1993)(citing Jordan, and Dixon); Henrie v. Dep't of Health and
Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1993)(same); Glass
v. Shalala, 43 F.3d 1392, 1396 (10th Cir. 1994)(citing Henrie);
Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citing
Henrie, and Campbell); Madrid v. Barnhart, 447 F.3d 788, 790
(10th Cir. 2006)(citing Dixon, Henrie, and Hawkins); Cowan v.
Astrue, 552 F.3d 1182, 1187 (10th Cir. 2008)(quoting Henrie).
Through the years, the court has had opportunity to explore the
extent of the duty of inquiry, and as the Commissioner argues,
the ALJ "does not have to exhaust every possible line of inquiry
in an attempt to pursue every potential line of question."

(Comm'r Br. 13)(quoting <u>Hawkins</u>, 113 F.3d at 1168).  "The standard is one of reasonable good judgment.  The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.'" <u>Hawkins</u>, 113 F.3d at 1168(quoting <u>Baca</u>, 5 F.3d at 479-80).  Although the duty is heightened in a case where the claimant is unrepresented, it applies even where he is represented by counsel.  <u>Baca</u>, 5 F.3d at 480; <u>Thompson</u>, 987 F.2d at 1492; <u>Jordan</u>, 835 F.2d at 1315.  This duty "would seem especially compelling when it is the SSA which, in part, is responsible for the lack" of evidence.  <u>Baca</u>, 5 F.3d at 480.

Here, after Dr. Perry opined that plaintiff's condition equals Listings 12.04 and 12.06, the ALJ asked her for confirmation of her opinion, restated the exhibit numbers upon which Dr. Perry based her opinion, asked no further questions, and turned the examination over to plaintiff's counsel.  (R. 470).  As plaintiff noted in her reply brief, the record reveals the ALJ did not question Dr. Perry's testimony in any way or indicate that she had concerns regarding the testimony. Plaintiff's counsel declined to ask further questions.  After the hearing, the ALJ did not propound interrogatories to Dr. Perry to clarify her opinion, but procured an additional psychological examination from Dr. Schlosberg which, when completed, the ALJ found to be "supportive of the opinions of Drs. Rahman and Perry."  (R. 21).  Yet, in the decision, the ALJ discounted Dr.

Perry's opinion for the period before July 6, 2005 because Dr.
Perry "testified only very briefly," did not specify which
"specific subsections" of the Listings were equaled, did not
provide a detailed rationale for her opinion, or an assessment in
accordance with the Psychiatric Review Technique, did not specify
a timeframe for equaling the Listings, and did not reconcile her
opinion with the contemporaneous clinical findings and diagnostic
assessments which the ALJ found are indicative of lesser
restrictions.  The resolution of each of these alleged
deficiencies was in the absolute control of the ALJ at the
hearing.  If they were material to the issue of the onset date,
the ALJ had a duty to further question Dr. Perry at the hearing,
to hold a supplemental hearing to follow-up with Dr. Perry, or to
propound interrogatories for Dr. Perry to further explain her
opinion.  Social Security hearings are not adversarial
proceedings, and the ALJ may not "hide the ball" from plaintiff
or his counsel.  While the ALJ provided an opportunity for
plaintiff's counsel to seek further explanation, she did not
indicate that she found any deficiency in Dr. Perry's opinion or
that further explanation was necessary in the circumstances.  She
did not even give Dr. Perry an opportunity to provide narrative
testimony explaining her opinion.  Moreover, as will be explained
more fully herein, the record evidence indicates Dr. Perry was of
the opinion that plaintiff's condition equaled the Listings on

his alleged onset date.  The deficiencies found by the ALJ were not apparent on their face.  To all outward appearances, plaintiff had "won her case," and counsel was justified in deciding there was no need for follow-up questioning.

At that point the evidence apparent to plaintiff's counsel was:  plaintiff's treating physician had provided an opinion statement which supported a finding of disability; and the medical expert selected to testify by the ALJ had acknowledged the onset date alleged by plaintiff and had opined that plaintiff's condition equaled not one, but two, Listings. Although two state agency consultants who are licensed psychologists and "acceptable medical sources," and who have "specific expertise regarding the evaluation of mental impairments under the severity requirements set forth in the Listing of Impairments and the disability programs administered by the Social Security Administration" had opined that plaintiff was not disabled, that does not present a conflict in evidence so important as to require follow-up questioning.  Dr. Perry is also a program psychologist and an "acceptable medical sources," and has "specific expertise regarding the evaluation of mental impairments under the severity requirements set forth in the Listing of Impairments and the disability programs administered by the Social Security Administration."  Moreover, Dr. Perry had benefit of more recent medical records than were available to

Drs. Schulman and Adams, and had benefit of the written opinion
of plaintiff's treating physician, who as the ALJ found is "a
board-certified psychiatrist and well-qualified mental healthcare
specialist who has established a long treating relationship with
claimant." Plaintiff's counsel was justified in not questioning
Dr. Perry further. If the ALJ believed the alleged deficiencies
were material, it was her duty of inquiry, not that of
plaintiff's counsel, to develop the record as to those issues.

The court is clueless as to why the ALJ did not agree with
the testimony of Dr. Perry but apparently sought to limit the
"damage" done from her testimony by not pursuing the inquiry.
Further, the primary issue here is the date of onset of
disability, and the Commissioner's rulings provide that "the
administrative law judge (ALJ) should call on the services of a
medical advisor when onset must be inferred." SSR 83-20, 1983-
1991 West's Soc. Sec. Reporting Serv. Rulings 49, 51 (1992). The
ALJ called on the services of a medical advisor, but the very
questions the ALJ found necessary and unanswered by the advisor's
testimony were the ones the ALJ didn't ask. Although in this
opinion the court does not rely upon a finding of bias by the
ALJ, it is concerned by the implication.

The ALJ stated numerous reasons for discounting the opinions
of Drs. Rahman and Perry (and by implication--Dr. Schlosberg) for
the period before July 6, 2005 (R. 19-21), and couched her

-24-

decision in terms of the "clinical findings and diagnostic assessments reflected [(or 'set forth')] in [('the')] contemporaneous [(or 'actual')] psychiatric treatment notes." (R. 21, 21, 21-22, 22, 22, 23, 26)(as cited, the ALJ used a form of this phrase seven times in the decision).  She gave several reasons (some couched in the same terms) for according "great weight" to the opinions of Drs. Schulman and Adams for the same period--before July 6, 2005.  The ALJ also stated numerous reasons for according weight to the same opinions of Drs. Rahman, Perry, and Schlosberg which had earlier been rejected, beginning July 6, 2005.  Notably, she did not specifically state any reason for rejecting the state agency consultant's opinions beginning July 6, 2005.  Were the court to individually evaluate each medical opinion and each reason, it might find that at least some of the reasons given were supported by substantial evidence in the record.  However, this case illustrates the reason it is necessary to evaluate all of the medical opinions together (remembering that deference is due the treating source opinion), especially when controlling weight cannot be accorded to a treating physician's opinion.  It is important to remember these principles because of "the necessarily incremental effect of [each individual medical source's] report on the aggregate assessment of the evidentiary record."  Lackey v. Barnhart, No. 04-7041, 127 Fed. Appx. 455, 459 (10th Cir. Apr. 5, 2005).

Here, plaintiff's treating psychologist, Dr. Rahman; a
nontreating psychologist who reviewed all of plaintiff's medical
records, Dr. Schlosberg; and the nonexamining expert who reviewed
all of the medical records except Dr. Schlosberg's report, Dr.
Perry; all opined that plaintiff's mental impairments were
disabling.  Each of these medical sources was familiar with
plaintiff's medical history, including the most recent
information available.  The medical opinions of Drs. Schulman and
Adams are simply insufficient under the circumstances to outweigh
the combined opinions of the other medical sources(which includes
the opinion of a treating source to which deference is owed).
There is no treating or examining(nontreating) medical source who
has provided a contrary opinion.  Moreover, most of the reasons
given by the ALJ to accord significant weight to Dr. Rahman's
opinion on and after July 6, 2005 (Dr. Rahman's notes reflect
monthly to quarterly visits after 2005, and Dr. Rahman is a
board-certified psychiatrist and a well-qualified mental
healthcare specialist with a long treating relationship with
plaintiff) apply with equal force to the period between August
2003 and July 2005.  Dr. Perry is equally qualified to render an
opinion pursuant to the regulations and the other criteria used
by the Social Security Administration as are Drs. Schulman and
Adams, and Dr. Perry's opinion was based upon all of the
information available to Drs. Schulman and Adams, plus an

additional two years of medical records and the opinion of
plaintiff's treating physician.

Although the ALJ sought to support her decision by appealing
to the "clinical findings and diagnostic assessments reflected in
contemporaneous psychiatric treatment notes," her argument is
insufficient under the circumstances to overcome the weight of
the combined opinions of Drs. Rahman, Perry, and Schlosberg.
Each of these doctors was aware of the "clinical findings and
diagnostic assessments reflected in contemporaneous psychiatric
treatment notes," and nonetheless formulated his or her opinion
of disabling limitations.  The ALJ's argument that treatment at
the University of Kansas Medical Center (KU) supports a finding
contrary to that of Drs. Rahman, Perry, and Schlosberg is not
supported by the evidence.  As plaintiff asserts, during his
treatment in 1999, plaintiff was off work for a medical leave of
absence from April till August 1999.  (R. 160-61).  During this
time, he began treatment at KU, and at his initial evaluation on
July 28, 1999, he was given a GAF score of 45.  (R. 255).
Plaintiff was assigned GAF scores at KU in the 60's in July,
2000, and in October and November, 2001; but in December 2001,
plaintiff was assigned a GAF score of 50.  (R. 235, 237, 238,
240).  Moreover, although most of the KU treatment records
include a blank space for the GAF score assessed on that visit,
only the five records cited above include GAF scores, whereas the

records of the remaining thirteen visits do not contain GAF scores. (R. 239-52) Thus, there is no clear indication whether the GAF scores recorded are of any particular significance. The KU records contain no opinion regarding plaintiff's limitations, and Drs. Rahman, Perry, and Schlosberg each was aware of the KU treatment records when he or she formulated his or her opinion regarding plaintiff's limitations. When viewed as a whole, the KU records are not in direct conflict with the records of Dr. Rahman, and do not raise serious doubts regarding the opinions of Drs. Rahman, Perry, and Schlosberg.

In these circumstances, the ALJ's findings contrary to the opinions of Drs. Rahman, Perry, and Schlosberg amount to merely preferring her own opinion over that of the medical sources. This she may not do. "An ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)(quotation omitted; emphasis in original).

Although plaintiff admits he did not quit working until his employer restructured his job by terminating all employee insurance agents, that fact supports rather than detracts from the opinion of his treating physician. (R. 161, 457). For

-28-

example, Dr. Rahman reported in September, 2004 that plaintiff was "angry about being evicted" from his apartment.  (R. 385). In December, 2004 he noted that plaintiff "Ruminates over past issues," (R. 382), and in January, 2005, he noted that plaintiff "Still ruminates about being evicted from Apt. in past."  (R. 381).  Plaintiff reported that when he lost his job, he was too depressed to find other employment, and spent the rest of 2000 and all of 2001 going through a period of depression and trying to figure out where to go from there.  (R. 457).  This supports the opinions of Drs. Rahman, Perry, and Schlosberg that plaintiff cannot maintain a work schedule.  When considered in light of the need to take a medical leave from April to August 1999, just ten months before losing his job due to restructuring, this suggests that once plaintiff lost his job, his mental impairments precluded return to work.

The facts of this case provide insufficient support for a determination that the opinions of Drs. Rahman, Perry, and Schlosberg should not be accorded significant weight before July 6, 2005.  The ALJ's determination of onset date is not supported by substantial evidence in the record viewed as a whole.

The court does not intend to imply that an ALJ may never accord greater weight to the opinion of nonexamining sources than to the opinion of a treating source or of a nontreating source. However, when she does so she must explain why, and must support

her finding with substantial evidence from the record.   Talbot,
814 F.2d at 1464; Broadbent, 698 F.2d at 414.   In a case such as
this, where the opinions of a treating source, a nontreating
source, and a nonexamining source (each of whom had the most
recent relevant medical records), are in general agreement and
are opposed only by the opinions of the nonexamining state agency
consultants at the initial and reconsideration review (based upon
less than the complete evidentiary record), the requirement for
an explanation supported by substantial evidence is heightened.
Broadbent, 698 F.2d at 412.

**IV.   Remand for an Immediate Award of Benefits**

Whether to remand the case for additional fact-finding or
for an immediate award of benefits is within the discretion of
the district court.   Ragland v. Shalala, 992 F.2d 1056, 1060
(10th Cir. 1993); Taylor v. Callahan, 969 F. Supp. 664, 673 (D.
Kan. 1997)(citing Dixon, 811 F.2d at 511).   In 2006, the Tenth
Circuit noted two factors relevant to whether to remand for an
immediate award of benefits:   Length of time the matter has been
pending and "whether or not 'given the available evidence, remand
for additional fact-finding would serve [any] useful purpose but
would merely delay the receipt of benefits."   Salazar v.
Barnhart, 468 F.3d 615, 626 (10th Cir. 2006)(quoting Harris v.
Sec'y of Health & Human Servs., 821 F.2d 541, 545 (10th Cir.

1997); and citing <u>Sisco v. Dep't of Health & Human Servs.</u>, 10 F.3d 739, 746 (10th Cir. 1993)).

The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. <u>Gilliland v. Heckler</u>, 786 F.2d 178, 184, 185 (3rd Cir. 1986). The Commissioner is not entitled to adjudicate a case <u>ad infinitum</u> until he correctly applies the proper legal standard and gathers evidence to support his conclusion. <u>Sisco</u>, 10 F.3d at 746.

Plaintiff argues that remand for an immediate award of benefits is proper because the evidences establishes the he has been disabled since July 2, 2000. (Pl. Br. 20). The Commissioner argues that if the court finds error in the decision, "the correct remedy is to remand to the Commissioner to correct any deficiencies." (Comm'r Br. 14)(citing <u>Harris v. Sec'y of Health and Human Servs.</u>, 821 F.2d 541, 544 (10th Cir. 1987); and <u>Ross v. Apfel</u>, 999 F. Supp. 1449, 1451 (D. Kan. 1998)).

The Commissioner provides no argument suggesting why remand for an immediate award of benefits is not appropriate in this case. Moreover, in <u>Harris</u>, cited by the Commissioner, the court determined remand for immediate award of benefits was appropriate

because additional fact-finding would serve no useful purpose. <u>Harris</u>, 821 F.2d at 545.  In <u>Ross</u>, the court did not award benefits because it found additional fact-finding would clarify the issues and insure a fully developed record.  <u>Ross</u>, 99 F. Supp. At 1451.

Plaintiff first applied for DIB almost five years ago, but the length of time this matter has been pending is not a controlling factor in the determination to remand for an immediate award of benefits in this case.  This is one of those rare cases where the administrative record has been fully developed, where substantial and uncontradicted evidence on the record as a whole indicates disability and entitlement to benefits, and where remand for additional fact-finding would serve no useful purpose but would merely delay the receipt of benefits.  Therefore, the court recommends remand for an immediate award of benefits based upon an onset date of July 2, 2000.

Here both parties agree that plaintiff is disabled.  The only question is the date of onset.  More than twenty-five years ago, the Commissioner provided a ruling "To state the policy and describe the relevant evidence to be considered when establishing the onset date of disability."  SSR 83-20, <u>supra</u> at 49.  SSR 83-20 provides that the individual's allegation, the work history, and the medical evidence are factors relevant to a determination

of onset date, but the individual's allegation is significant "only if it is consistent with the severity of the condition(s) shown by the medical evidence." Id.  In disabilities of nontraumatic origin, "The starting point in determining the date of onset of disability is the individual's statement as to when disability began." Id. at 50.  "The day the impairment caused the individual to stop work is frequently of great significance in selecting the proper onset date." Id.  And, "The medical evidence serves as the primary element in the onset determination." Id.

A slowly progressive impairment need not have reached listing level severity for an onset date to be established. Id. at 51.  And, the onset date determined "can never be inconsistent with the medical evidence of record." Id.  Where the medical evidence regarding onset is not clear, it may be necessary to infer the onset date, and in such a case the ALJ should seek testimony from a medical expert to assist in inferring the onset date. Id.  "The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months." Id. at 52.

As discussed above, substantial evidence in the record as a whole does not support the onset date determined by the ALJ.  The

record does however, contain evidence regarding onset.  Plaintiff alleges an onset of July 2, 2000 when he lost his job as an insurance agent.  (R. 52, 457).  Ten months before losing his job, plaintiff was on a medical leave due to mental impairments, and was assessed with a GAF score of 45 during that time.  (R. 160, 255).  After plaintiff lost his job, he did not work at all for eighteen months, and began selling jewelry and T-shirts as a weekend vendor in 2002 in some friends' bar in Kansas City, Missouri.  (R. 16, 457-59).  As the ALJ pointed out, at no time did the earnings from vending suggest significant gainful activity.  (R. 16).

Dr. Rahman's opinion on its face relates back only to January 2004, and Dr. Rahman only began treating plaintiff in August, 2003.  Thus, the earliest clear date of onset based solely upon Dr. Rahman's opinion without inference from the other medical records could be August, 2003.

The ALJ found that Dr. Perry did not provide an opinion as to the onset date.  The court does not agree.  At the hearing, Dr. Perry testified that she was familiar with the Listing of Impairments and the rules and regulations governing Social Security disability.  (R. 469).  She testified that she had received medical records 1F through 16F.  Id.  The ALJ then informed Dr. Perry that plaintiff alleged disability "by reason of his mental impairments" since July 12, 2000, and asked Dr.

-34-

Perry if she had an opinion with regard to plaintiff's medical impairments.  Id.  Dr. Perry responded "Yes, Your Honor."  Id. She indicated that plaintiff has been diagnosed with major depressive disorder, generalized anxiety disorder, and panic disorder, and she opined that plaintiff's condition equals Listings 12.04 and 12.06.  (R. 469-70).  In response to the ALJ's final two questions, Dr. Perry indicated that she believed plaintiff's condition equals Listings 12.04 and 12.06, and stated that her opinion was based upon Exhibits 1F, 3F, 4F, 11F, 12F, 14F, and 15F.  (R. 470).  These exhibits upon which Dr. Perry relied consist of all of the medical records relating to plaintiff's mental impairments except (1) the Psychiatric Review Technique Form and (2) the RFC Assessment - Mental completed by the state agency psychologists, and (3) Dr. Schlosberg's report, which was begun and completed after Dr. Perry's testimony.

Dr. Perry did not qualify her testimony in any way.  Her testimony was based upon consideration of all of the treatment records relating to plaintiff's mental impairments from 1994 through July, 2006.  The natural conclusion from the ALJ's questioning and Dr. Perry's testimony, and the way it was presented is that Dr. Perry believed plaintiff's condition equaled Listings 12.04 and 12.06 beginning with the onset date alleged by plaintiff.

-35-

Dr. Schlosberg evaluated plaintiff on February 21, 2007, and his report is basically a snapshot of plaintiff's condition at that time and contains no specific opinion regarding onset. (R. 445-51). However, as the ALJ noted, Dr. Schlosberg's report "is supportive of the opinions provided by Drs. Rahman and Perry." (R. 21).

In accordance with the criteria presented in SSR 83-20, plaintiff alleged onset on July 2, 2000, the medical advisor, Dr. Perry opined that plaintiff's condition equaled Listings 12.04 and 12.06 on the alleged onset date, and the record medical evidence is consistent with onset from that date. The only contrary medical evidence is the opinions of Drs. Schulman and Adams. As discussed above, those opinions are insufficient to outweigh the concurring opinions of Drs. Rahman, Perry, and Schlosberg. To the extent the Commissioner argues that the testimony of Dr. Perry is not absolutely clear, any need to clarify that opinion was in the control of the ALJ and she decided not to make further inquiry of the medical advisor. Moreover, the Appeals Council had the request for review in this case under advisement for fifteen months and did not remand for clarification of Dr. Perry's testimony. Substantial and uncontradicted evidence on the record as a whole indicates that plaintiff is disabled and entitled to benefits. The record

points in but one direction and remand is necessary for award of benefits with an onset date of July 2, 2000.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case to the Commissioner with instructions to immediately award benefits based upon an onset date of disability of July 2, 2000.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this  14th  day of September 2009, at Wichita, Kansas.


s:/  Gerald B. Cohn
**GERALD B. COHN**
**United States Magistrate Judge**

-37-